Argued February 11; decided February 17, 1896.

## EX PARTE TONGUE.

### WHALLEY *v.* TONGUE.
[43 Pac. 717.]

1. DISBARMENT OF ATTORNEY — UNPROFESSIONAL CONDUCT.— In a proceeding for disbarment it appeared that defendant, being employed to resist the probate of a will, drew up a petition for his client's appointment as administrator, and prepared a typewritten form of journal entry for the clerk, naming therein three persons as appraisers; that defendant then had the petition filed, and sent the same, with the entry, to the county judge, who lived at some distance; that, after filing the petition, defendant learned that a petition for the probate of the will was on file, but did not inform the judge,

who approved the petition sent him by defendant, signed the journal entry and returned the papers to defendant; that the latter then went to the clerk's office with the appraisers named, to have them qualify, but, one of them declining to act, defendant drew his pencil across his name in the entry, and wrote above it the name of another, the change being made in accordance with a custom of the bar, and in the presence of the three appraisers finally chosen, the clerk, and attorneys for proponents. *Held*, that there was nothing in defendant's conduct to warrant disbarment.

2. MUTILATION OF PUBLIC RECORD — CODE, § 1853.— A form of entry, signed by the judge, and intended for entry in the journal of the court, is not a "public record, paper, or writing," the mutilation or changing of which is prohibited by Hill's Code, § 1853. The form was merely for the direction of the clerk, and the book or journal is the court record.

An original proceeding in the supreme court on petition of John W. Whalley for the disbarment of Thomas H. Tongue. The testimony was taken in open court, and upon consideration thereof the petition was dismissed.

For the petition there was an argument by *Mr. John W. Whalley*, in *pro. per.*

*Contra* there was an argument by *Mr. Thomas H. Tongue*, in *pro. per.*

PER CURIAM. Thomas H. Tongue, an attorney of this court, is accused by J. W. Whalley, who is likewise an attorney, of unprofessional conduct in counseling and maintaining certain proceedings in the matter of the estate of Edward Constable, deceased, which it is alleged he knew to be illegal and unjust, and in mutilating or changing a public record, paper, or writing, in violation of section 1853, Hill's Code. The acts complained of were done and performed in certain litigation between the Constable

29 OR.— 4.

heirs over the estate of their father, in which the accused and accuser are counsel for the respective parties. The details of this litigation need not be recited here, as it will be time enough to consider the various legal complications which seem to have arisen therein when the appeal already taken reaches here in regular order. It is sufficient for the purposes of this proceeding to say that we have carefully examined the testimony, and find therefrom that neither of the charges against Mr. Tongue are, in our opinion, sustained by the evidence. The proceeding in relation to the appointment of Mrs. Shute as administratrix appears to have been taken in the utmost good faith, and to have been prompted solely by a desire to protect her interests under the law as Mr. Tongue understood it; and whether his judgment was at fault in his view of the law is wholly material in this inquiry.

1. The facts in relation to the other charge are: That some time prior to August twenty-first, eighteen hundred and ninety-five, Judge Hare and Mr. Tongue were retained by Mrs. Elizabeth Shute to resist the probate of what purported to be the last will and testament of one Edward Constable, deceased. In the forenoon of the twenty-first Mrs. Shute consulted with Judge Hare about taking some steps looking toward the settlement of the estate, and, having been advised by him to go to Mr. Tongue and take his advce also, and have him draw the necessary papers, she went to the office of the latter, who drew up a petition for her appointment as administratrix, which

petition contained the necessary allegations showing the invalidity of the purported will.   At the same time he prepared a typewritten form of journal entry for the clerk, and named therein J. D. Merryman, J. J. Morgan, and W. D. Smith, as appraisers. After having sworn Mrs. Shute to the petition as notary public, Mr. Tongue took it to the courthouse for the purpose of presenting it to the county court; but, not finding the judge there, he had the petition filed, and sent the same, with the journal entry, by Mrs. Shute to Mr. Hare, who thereupon wrote a letter to the Hon. J. B. Cornelius, county judge, directing his attention to the petition, and asking his approval of the entry, and dispatched a man with it and the petition and entry to the home of the county judge, some eight miles distant.   The judge approved the petition, and signed the entry, which were returned to Mr. Tongue.   He at once called upon the appraisers named in the entry, and took them to the clerk's office for the purpose of having them qualify and make an early appraisment.   Upon reaching the clerk's office, however, Mr. Smith, a member of the law firm employed to probate the will, declined to act as appraiser, giving as his reasons therefor his adverse employment, and hence the impropriety of his so acting.   A discussion then arose as to who should be substituted, and, some one having suggested the name of J. B. Wilkes, Mr. Tongue took his pencil and drew it across the name of W. D. Smith, and wrote above it the name of J. B. Wilkes, and in this condition handed the petition with the entry to the clerk.   The change was made in the presence of

Mr. Kane, the deputy clerk, the three appraisers finally named, and Messrs. Smith and Bowen the attorneys for proponents, and without objection from them. Some controversy arose between the attorneys regarding the right of the appraisers to act before the letters of administration were issued, and it was finally concurred in that no appraisement should take place until that was done. Mr. Tongue immediately wrote out a bond, and gave it to Mr. Hare, who forwarded it to the county judge, obtained his approval, and had it filed, and letters of administration issued the next day, August twenty-second, eighteen hundred and ninety-three. Just after the petition for administration had been filed, Mr. Tongue's attention was called to the fact that there was a petition on file praying that the will be admitted to probate, signed by Smith and Bowen as attorneys. The judge was not informed of this fact when the petition of Mrs. Shute was presented. Judge Cornelius had, prior to this time, conversed with Judge W. E. Smith, who had drawn the will and was named as executor therein, about having it admitted to probate, and on the day prior to his starting for the coast told Judge Smith and Mr. Malone, the husband of Mrs. Malone, who subsequently filed the petition for probate of the will, that he was going and would be gone two or three weeks, and that if they wanted to probate the will they had better do it that day. Malone said in reply, " Oh, I guess I will let it go until you get back. I don't know whether it will be done at all." Judge Hare and Judge Smith had previously consulted with Mr. Malone about the pro-

bate of the will, and Judge Hare had talked with other heirs about it, and he says, "I got the impression that none of the heirs here would probate the will." So the matter stood until August twenty-first, when it developed that the heirs were occupying antagonistic positions, and it then became a race of diligence as to who should obtain control of the estate pending a contest of will. The evidence disclosed a custom which has prevailed in the county for years, by which the attorneys representing the estate of deceased persons habitually suggested or named the appraisers for appointment, and the judge made the order accordingly, and if it should afterwards, and before the entry went upon the journal and became of record, turn out that one or more of them could not act, the attorney substituted some competent person or persons in his or their stead, which action ultimately received the sanction of the judge and it was in view of this practice the change was made by Mr. Tongue.

While, as a matter of propriety, it would have been a great deal better if, at the time Mrs. Shute's petition for administration was presented to Judge Cornelius, the fact had been disclosed to him that a petition was on file for the probate of the will, and certainly, as a matter of practice, it ought to have been done, and while we cannot commend the practice prevailing in that county, and perhaps elsewhere, where the judge does not have his residence at the county seat, by which attorneys may substitute other appraisers in the stead of those named by the judge, with a view of finally obtaining his sanc-

tion to the substitution, as it is calculated to lead to irregularities and possibly something worse, yet we see nothing culpable in Mr. Tongue's action in the present case. In his zeal to serve his client he deemed it unnecessary under the circumstances to notify the judge of the pending proceedings for probate, or perhaps he may not have given it the attention that the occasion demanded, and as we have seen he substituted the name of J. B. Wilkes for W. D. Smith as appraiser under a custom long established, openly and in the presence of several persons, by the consent, tacit at least, of opposing counsel, without any attempt at concealment and without any purpose to obtain undue advantage. In the light of all these circumstances and transactions there is no unwarranted, ulterior, or designing purpose made manifest on the part of Mr. Tongue to gain an improper or undue advantage, or to violate any public or other duty enjoined upon him as an attorney, or of the proprieties which should at all times be punctiliously observed by such an officer.

2. The form of entry signed by the judge, intended for entry in the journal of the court, was not a public record, paper, or writing within the meaning of section 1853 of Hill's Code, and hence there was no violation of that section. It amounted to nothing more than a statement by the county judge that he had appointed Mrs. Shute as administratrix, and had approved the selection of appraisers as named by Mr. Tongue, from which the clerk was authorized to make the proper entry to that effect

in the probate record.  It was from the entry as actually made in the record and approved by the court that the appointment of appraiser obtained its validity.  These considerations lead to the exoneration of the accused.  With subsequent transactions we can have nothing to do at this time.  As to whether the one party or the other was right in the advocacy of their respective views touching the proper method to be pursued in the contest touching the probate of the will, are matters about which able counsel may honestly differ, and the fact that the matter is coming to this court we must take as evidence only of the fact that they have so differed.

A judgment of acquittal must be entered, and it is so ordered.                    ACQUITTED.